IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-002266-RBJ

CITIZENS UNITED, a Virginia Non-Stock Corporation,

      Plaintiff,

v.

SCOTT GESSLER, in his official capacity as Secretary of State of the State of Colorado; and
SUZANNE STAIERT, in her official capacity as Deputy Secretary of State of the State of
Colorado,

      Defendants,

and

COLORADO DEMOCRATIC PARTY,
GAROLD A. FORNANDER,
LUCÍA GUZMÁN, and
DICKEY LEE HULLINGHORST,

      Intervenor-Defendants.

---

# ORDER

---

      The case presented today is rather straightforward.  Citizens United argues that its free speech rights are violated when the law requires it to disclose its donors while effectively exempting traditional print media and broadcasters from the same requirement.  It contends that Colorado's reporting and disclosure exemptions are a form of content- or viewpoint-based discrimination compelling the invalidation of the entire disclosure scheme.  I am not convinced and therefore deny plaintiff's motion for a preliminary injunction.

## BACKGROUND

The plaintiff, Citizens United, is a Virginia non-stock corporation that regularly engages in political speech and media activities.  Its principal purpose is "to promote social welfare through informing and educating the public on conservative ideas and positions on issues, including national defense, the free enterprise system, belief in God, and the family as the basic unit of society."  *See* Federal Election Commission Advisory Opinion 2010-8 [ECF No. 1-1] at 1.  Citizens United produces, markets, and distributes films on various political topics as part of its effort to advocate, recruit members, and disseminate information.  One of those films, *Rocky Mountain Heist* (hereinafter "the Film"), is set to be completed by September 24, 2014 and to be released and distributed in the first week of October.  The Film concerns various Colorado advocacy groups and their impact on Colorado government and public policy.  Complaint [ECF No. 1] at ¶ 27.  It will include "unambiguous references to elected Colorado officials who are candidates for office in this year's general elections . . . ."  *Id.*  Although the Film will not editorially endorse specific candidates, it will "likely include events where participants expressly advocate the election or defeat of one or more candidates in the November 4, 2014 elections."  *Id.*  In total, $548,975 has been dedicated to the production of the Film, and $225,000 has been set aside for marketing.  *Id.* at ¶ 29.

In 2002, Colorado's voters overwhelmingly approved Amendment 27 to the state constitution, which has been incorporated as Article XXVIII.  Section 1, entitled "Purposes and findings," states:

> The people of the state of Colorado hereby find and declare that large campaign contributions to political candidates create the potential for corruption and the appearance of corruption; that large campaign contributions made to influence election outcomes

allow wealthy individuals, corporations, and special interest groups to exercise a disproportionate level of influence over the political process; that the rising costs of campaigning for political office prevent qualified citizens from running for political office; that because of the use of early voting in Colorado timely notice of independent expenditures is essential for informing the electorate; that in recent years the advent of significant spending on electioneering communications, as defined herein, has frustrated the purpose of existing campaign finance requirements; that independent research has demonstrated that the vast majority of televised electioneering communications goes beyond issue discussion to express electoral advocacy; that political contributions from corporate treasuries are not an indication of popular support for the corporation's political ideas and can unfairly influence the outcome of Colorado elections; and that the interests of the public are best served by limiting campaign contributions, establishing campaign spending limits, providing for full and timely disclosure of campaign contributions, independent expenditures, and funding of electioneering communications, and strong enforcement of campaign finance requirements.

Colo. Const. art. XXVIII, § 1.  Colorado has also enacted the Fair Campaign Practices Act

("FCPA"), which declares:

The people of the state of Colorado hereby find and declare that large campaign contributions to political candidates allow wealthy contributors and special interest groups to exercise a disproportionate level of influence over the political process; that large campaign contributions create the potential for corruption and the appearance of corruption; that the rising costs of campaigning for political office prevent qualified citizens from running for political office; and that the interests of the public are best served by limiting campaign contributions, establishing campaign spending limits, full and timely disclosure of campaign contributions, and strong enforcement of campaign laws.

C.R.S. § 1-45-102.  These constitutional and statutory provisions impose various reporting and

disclosure requirements on speakers engaged in electioneering communications and independent

expenditures.

Article XXVIII and the FCPA define an "electioneering communication" as:

[A]ny communication broadcasted by television or radio, printed in a newspaper or on a billboard, directly mailed or delivered by hand to personal residences or otherwise distributed that:

> (I) Unambiguously refers to any candidate; and
> (II) Is broadcasted, printed, mailed, delivered, or distributed within thirty days before a primary election or sixty days before a general election; and
> (III) Is broadcasted to, printed in a newspaper distributed to, mailed to, delivered by hand to, or otherwise distributed to an audience that includes members of the electorate for such public office.

Colo. Const. art. XXVIII, § 2(7)(a); C.R.S. § 1-45-103(9).  The term "electioneering communication" does not include:

> (I) Any news articles, editorial endorsements, opinion or commentary writings, or letters to the editor printed in a newspaper, magazine or other periodical not owned or controlled by a candidate or political party;
> (II) Any editorial endorsements or opinions aired by a broadcast facility not owned or controlled by a candidate or political party;
> (III) Any communication by persons made in the regular course and scope of their business or any communication made by a membership organization solely to members of such organization and their families;
> (IV) Any communication that refers to any candidate only as part of the popular name of a bill or statute.

Colo. Const. art. XXVIII, § 2(7)(b); C.R.S. § 1-45-103(9).

Article XXVIII and the FCPA define an "expenditure" as:

> [A]ny purchase, payment, distribution, loan, advance, deposit, or gift of money by any person for the purpose of expressly advocating the election or defeat of a candidate or supporting or opposing a ballot issue or ballot question.  An expenditure is made when the actual spending occurs or when there is a contractual agreement requiring such spending and the amount is determined.

Colo. Const. art. XXVIII, § 2(8)(a); C.R.S. § 1-45-103(10).  The term "expenditure" does not include:

4

(I) Any news articles, editorial endorsements, opinion or commentary writings, or letters to the editor printed in a newspaper, magazine or other periodical not owned or controlled by a candidate or political party;

(II) Any editorial endorsements or opinions aired by a broadcast facility not owned or controlled by a candidate or political party;

(III) Spending by persons, other than political parties, political committees and small donor committees, in the regular course and scope of their business or payments by a membership organization for any communication solely to members and their families;

(IV) Any transfer by a membership organization of a portion of a member's dues to a small donor committee or political committee sponsored by such membership organization; or payments made by a corporation or labor organization for the costs of establishing, administering, or soliciting funds from its own employees or members for a political committee or small donor committee.

Colo. Const. art. XXVIII, § 2(8)(b); C.R.S. § 1-45-103(10).  Article XXVIII and the FCPA define an "independent expenditure" as "an expenditure that is not controlled by or coordinated with any candidate or agent of such candidate."  Colo. Const. art. XXVIII, § 2(9); C.R.S. § 1-45-103(11).

Section 6 of Article XXVIII provides that any person expending $1000 or more per calendar year on electioneering communications must submit reports to the Colorado Secretary of State, which include spending on the electioneering communication as well as the name, address, occupation, and employer of any person that contributed more than $250 to fund the communication.  Colo. Const. art. XXVIII, § 6(1).  Section 1-45-108 of the Colorado Revised Statutes governs the timing and contents of such reports.

Section 5 provides that any person making an independent expenditure in excess of $1000 per calendar year must file a notice with the Secretary of State describing the independent expenditure and disclosing the candidate who it is intended to support or oppose.  Colo. Const. art. XXVIII, § 5(1).  The person making the independent expenditure must also prominently

5

disclose its identity in the resulting communication. *Id.* § 5(2). C.R.S. 1-45-107.5 governs the timing and contents of such notice. Just as in the case of electioneering communications, any person expending more than $1000 on an independent expenditure must report to the Secretary of State the amounts spent and the name, address, occupation, and employer of any person that contributed more than $250 to fund it. C.R.S. § 1-45-107.5(4)(b). The person is also required to disclose any donation in excess of $20 received during the reporting period for purposes of making an independent expenditure. C.R.S. § 1-45-107.5(8).

The Colorado Secretary of State is responsible for enforcing and promulgating rules in furtherance of these campaign finance provisions. *See* Colo. Const. art. XXVIII, §§ 8–9. In addition, any person, private or public, who believes that there has been a violation of these provisions may file a written complaint with the Secretary of State, who shall promptly refer the complaint to an administrative law judge for a hearing on the matter. *Id.* § 9(2)(a). Any person found to have violated the disclosure provisions of Sections 5, 6, or 7 will be liable for fifty dollars per day for each day the required information fails to be filed. *Id.* § 10(2)(a); *see also* C.R.S. § 1-45-111.5(c).[1] Any person who fails to file three or more successive reports concerning contributions, expenditures, or donations will be subject to a civil penalty of up to five hundred dollars for each day the reports are not filed. C.R.S. § 1-45-111.5(c). Lastly, any person who knowingly and intentionally fails to file three or more reports will be subject to a civil penalty of up to one thousand dollars for each day the reports are not filed. *Id.*

---

[1] The plaintiff claims that it would also be subject to civil penalties of at least double and up to five times the amount contributed, received, or spent in violation of the applicable provision pursuant to Article XXVIII, § 10(1). *See* Motion for Preliminary Injunction [ECF No. 4] at 7. However, Section 10(1) concerns penalties for persons who exceed contribution or voluntary spending limits under Sections 3 and 4 of Article XXVIII. Citizens United has put forward no claim that it is subject to either of these spending limits.

On April 18, 2014 Citizens United filed a Petition for Declaratory Order with the Colorado Secretary of State, one of the defendants in this action, seeking clarification as to whether its communications and expenditures related to the Film qualified as exceptions to the definitions of "electioneering communication" and "independent expenditure," thereby obviating the need for Citizens United to comply with the various reporting and disclosure requirements. The Secretary published notice of a hearing and collected written comments from the public. A public hearing was held on June 3, 2014. On June 5, 2014 the Deputy Secretary, the other defendant in this action, issued a Declaratory Order concluding that the Film and related activities did not fall within any of the enumerated exemptions to the definition of "electioneering communication." Declaratory Order [ECF No. 1-2] at 5–8. Since the Film had not yet been made, Deputy Secretary Staiert was unable to determine whether the distribution and marketing of the Film qualified as "expenditures," and as such did not address whether the exemptions would apply. *Id.* at 10. The declaratory order constituted a final agency decision, which Citizens United chose not to appeal. Citizens United now brings this suit to challenge the constitutionality of Colorado's reporting and disclosure requirements.

The matter currently before the Court is the plaintiff's Motion for Preliminary Injunction [ECF No. 4]. A hearing was held on the motion during the morning of September 16, 2014 and included counsel for the plaintiff, defendants, and intervenor-defendants. Argument was heard from all parties, with the defendants also choosing to put on evidence in the form of witness testimony.

**LEGAL STANDARD**

"It is well settled that a preliminary injunction is an extraordinary remedy, and that it should not be issued unless the movant's right to relief is 'clear and unequivocal.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (quoting *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001)). To succeed on a motion for a preliminary injunction, the movant must demonstrate "(1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest." *Kikumura*, 242 at 955. In First Amendment cases "the likelihood of success on the merits will often be the determinative factor." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1128 (10th Cir. 2013) (en banc) (quoting *ACLU of Illinois v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012), *cert. denied,* 133 S. Ct. 651 (2012)).

Where the last three factors "tip strongly" in favor of granting the injunction, courts in the Tenth Circuit apply a modified test in lieu of proof of likelihood of success on the merits. *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002). This modified test requires the movant to demonstrate only "that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberative investigation." *Id.* (quotation marks omitted). Put another way, "[p]laintiffs may carry their burden of demonstrating likelihood of success on the merits . . . by demonstrating a 'fair ground for litigation' of one or more of their claims." *Colo. Wild Inc. v. U.S. Forest Serv.*, 523 F. Supp. 2d 1213, 1223 (D. Colo. 2007) (quoting *Heideman*, 348 F.3d at 1189). However, "[w]here . . . a preliminary injunction seeks to stay governmental action taken in the public interest pursuant to a

8

statutory or regulatory scheme, the less rigorous fair-ground-for-litigation standard should not be applied." *Heideman*, 348 F.3d at 1189 (internal quotation marks omitted).  Here, the plaintiff seeks to enjoin governmental action taken in the public interest pursuant to Colorado's campaign finance laws.  Therefore, the fair-ground-for-litigation standard does not apply.  Citizens United maintains the burden of showing a substantial likelihood of success on the merits.

Three types of injunctions are specifically disfavored by the Tenth Circuit: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.  *See, e.g.*, *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc) *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) (citation omitted).  A request for a preliminary injunction falling within one of these three categories "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."  *Id.*  Furthermore, even if the fair-ground-for-litigation standard would otherwise apply, movants seeking one of these three types of injunctions may not rely on the modified standard and must instead "make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms . . . ."  *Id.* at 976.

"[T]he status quo is the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing."  *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001) (citation and internal quotation marks omitted).  "In determining the status quo for preliminary injunctions, this court looks to the

reality of the existing status and relationship between the parties and not solely to the parties'

legal rights." *Id.*  Currently, Citizens United is bound to comply with the reporting and

disclosure laws whose constitutionality has been called into question in this suit.  In requesting

that the Court enjoin Colorado from enforcing these laws, the plaintiff seeks to significantly alter

the status quo.  Furthermore, granting the injunction would afford Citizens United all the relief

that it could recover at the conclusion of a full trial on the merits.  For these reasons, the Court

must more closely scrutinize the motion to assure that the exigencies of the case support the

granting of a remedy that is extraordinary even in the normal course.

## ANALYSIS

The Supreme Court was forced to balance two interests when it decided the pivotal case

*Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010): the interest of political

speakers and the interest of their audience, the electorate.  As relevant to the present case, the

Court came to the conclusion that while "[t]he First Amendment protects political speech,"

disclosure "permits citizens and shareholders to react to the speech of corporate entities in a

proper way."  558 U.S. at 371.  "This transparency enables the electorate to make informed

decisions and give proper weight to different speakers and messages."  *Id.*  In *Citizens United*,

the Court found "no constitutional impediment to the application of" disclaimer and disclosure

requirements to Citizens United's advertisements of the movie *Hillary* or to the movie itself.  *See*

*id.*  And yet, Citizens United is here today asking this Court to find such an impediment with

regard to its new film, *Rocky Mountain Heist*.

A. <u>**Level of Scrutiny.**</u>

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. "Laws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United*, 558 U.S. at 340 (quoting *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 464 (2007) (*WRTL*)). Restrictions that distinguish among different speakers, "allowing speech by some but not others," are highly disfavored under the First Amendment because they "are all too often simply a means to control content." *Id.* However, "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech *because of* disagreement with the message it conveys." *Id.* (citing *Clark v. Cmty. for Creative Non-Violance*, 468 U.S. 288, 295 (1984) (emphasis added). "Beyond doubt, disparate impact alone is not enough to render a speech restriction content- or viewpoint-based." *Pahls v. Thomas*, 718 F.3d 1210, 1235–36 (10th Cir. 2013). "The government's purpose is the controlling consideration." *Ward*, 491 U.S. at 791.

"[I]t is inherent in the nature of the political process that voters must be free to obtain information from diverse sources in order to determine how to cast their votes." *Citizens United*, 558 U.S. at 341. The public's interest in determining how to cast their votes naturally extends to an interest in knowing who is speaking. *See, e.g.*, *id.* at 368; *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 792 n.32 (1978) ("Identification of the source of advertising may be

required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected."); *Buckley v. Valeo*, 424 U.S. 1, 66–67 (1976). Because "disclosure is a less restrictive alternative to more comprehensive regulations of speech," *Citizens United*, 558 U.S. at 369, the Supreme Court "has subjected these requirements to 'exacting scrutiny,' which requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest," *id.* at 366–67 (quoting *Buckley*, 424 U.S. at 64, 66).

Citizens United frames its argument as a challenge to laws burdening speech on the basis of the speaker's identity, claiming that the State is effectively picking winners and losers in the battle of ideas. The State is doing no such thing. First, the disclosure regime distinguishes based on the form of speech, not on the identity of the speaker. Second, even acknowledging that the effect of the law is commonly to exempt press entities from Colorado's reporting requirements, nothing suggests that the intent (or effect) is to discriminate on the basis of content or viewpoint. In fact, Citizens United complains time and again that the law is unfair because it would allow for newspapers and broadcast facilities to publish the exact same information it seeks to distribute without subjecting those entities to the disclosure requirements.[2] The plaintiff hopes that using the words "identity-based discrimination" will transform this claim into one demanding strict scrutiny review. However the words, without more, are not enough. The

---

[2] For example, the introduction to the plaintiff's Reply protests, "There is no dispute that Citizens United would be required to make extensive disclosures regarding the funding and other aspects of its forthcoming Film . . . yet a traditional media entity engaging in *exactly* the same speech 'in a newspaper, magazine or other periodical' or 'aired by a broadcast facility' would be exempt from those requirements." [ECF No. 20 at 1] (emphasis in original).

claim, which in earnest challenges the disclosure rules because they are underinclusive, is subject to review under the exacting scrutiny framework.[3]

**B. <u>Application</u>.**

The plaintiff asks that the Court "enjoin enforcement of Colorado's discriminatory reporting and disclosure requirements for electioneering communications and independent expenditures." [ECF No. 4 at 1]. The Court denies the motion on the grounds that the plaintiff has failed to meet its burden of showing a substantial likelihood of success on the merits, that it will suffer irreparable injury if an injunction does not issue, that the balance of harms falls in its favor, and that such an injunction would not be adverse to the public interest.

1. <u>Substantial Likelihood of Success</u>

Citizens United has not shown that it is likely to succeed on the merits under exacting scrutiny review. To reiterate, exacting scrutiny requires a "substantial relation" between the disclosure requirements and a "sufficiently important" governmental interest. *Citizens United*, 558 U.S. at 366–67 (quoting *Buckley*, 424 U.S. at 64, 66). In the First Amendment context, this standard entails "a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1456 (2014) (citation and internal quotation marks omitted).

---

[3] At least one circuit court has held that even where a disclosure exemption can be said to be content- or viewpoint-based, it remains subject to exacting scrutiny review. *See Ctr. for Individual Freedom, Inc. v. Tennant*, 706 F.3d 270, 287 (4th Cir. 2013). The Court need not address this question as the plaintiff's contention that the exemptions are content-based has proven unavailing.

*a. Facial Challenge*

Campaign disclosure laws vindicate three important interests: "providing the electorate with relevant information about the candidates and their supporters; deterring actual corruption and discouraging the use of money for improper purposes; and facilitating enforcement of the prohibitions in the Act." *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 121 (2003) (citing *Buckley*, 424 U.S. at 66–68); *see also Republican Party of New Mexico v. King*, 741 F.3d 1089, 1095 n.3 (10th Cir. 2013) ("The Court upheld disclosure requirements at issue in *Citizens United* because they provided the electorate with information about the identity of the speaker and did not impose a chill on political speech, even for independent expenditures."). The defendants argue that the disclosure regime is necessary to Colorado's interest in ensuring its electorate is informed, and that the disclosure laws are substantially related to this objective.

According to the defendants, "the justifications for requiring disclosure apply more strongly to isolated instances of political advocacy than they do to speech by institutionalized and longstanding press entities." Defendants' Response [ECF No. 12 at 16]. The long-term, repeat nature of newspapers, periodicals, and recurring television broadcasts allows voters to, over time, "gauge the trustworthiness of a particular source based on their perception of its ideology and [its] track record." *Id.* This informational advantage of periodic press sources does not apply to the viewer or reader of "drop-in political advocacy like a standalone film, a single election mailer, or an anonymous website that appears for only a few weeks before an election." *Id.* Without identifying the speaker, these isolated incidents leave voters without the means to evaluate the integrity or credibility of the message.

Citizens United challenges that this depiction of traditional media shows that the State prefers one speaker over another, that it finds the traditional press more credible than other sources of information. But the plaintiff considerably mischaracterizes the defendants' position. What's more, it isn't clear to me exactly what type of information newspapers and broadcast facilities would be required to disclose if these exemptions did not exist. In Colorado, the only contributors that speakers must disclose are those who earmark their donations for the purpose of funding the independent expenditure or the electioneering communication. During the hearing, plaintiff's counsel tried to convince the Court that without the exemptions newspapers would be obligated to disclose the names of individual subscribers, advertisers, and financial lenders. Of course, no showing was made that any of these "contributors"—if they can be called such— earmark their funds for the purpose of making independent expenditures or electioneering communications. Frankly put, the position was rather nonsensical, and it is clearly at odds with the operation of the disclosure laws.

Citizens United also insists that if the public has a right to know who funds its films, it likewise has a right to know whether a political candidate, public-advocacy group, or political party funded an investigative journalist's news story. [ECF No. 4 at 16]. Again, no showing has been made that this type of arrangement exists between journalists and political advocates. If anything, I would imagine the funding of advocacy pieces would violate journalists' professional ethical standards. Since there is no reason to suspect, based on this statement alone, that political groups fund news stories by paying off journalists, the Court disregards this contention as unfounded.

Next, Citizens United argues that there is no substantial relation between Colorado's interest in informing its electorate and its requiring disclosures from "an established documentary filmmaker" while in theory exempting "a new press entity that suddenly 'began distributing a periodical newsletter in Colorado.'"  Plaintiff's Reply [ECF No. 20 at 7].  First and foremost, this position undermines the primary argument plaintiff's counsel put forward during the hearing, that through the use of exemptions the State is preferring and promoting *traditional* press entities over upstarts.[4]  Furthermore, the argument ignores the real issue, which is whether there is a substantial relation between the State's interest and the disclosure scheme as a whole, not a single hypothetical.  As noted above, the test requires only a reasonable fit, one whose scope is in proportion to the interest served.  The provision of this one hypothetical has not persuaded the Court that the scope of the disclosure scheme, including its exemptions, is not in proportion to the interest of informing the electorate.

The plaintiff's final argument was relegated to a footnote in its original motion: "Even if the reporting and disclosure requirements do not violate the First Amendment, they violate Article II, Section 10 of the Colorado Constitution, which provides equal, if not greater, protections against speaker-based discrimination."  [ECF No. 4 at 18 n.1].  The statement is followed by a citation to two Colorado Supreme Court cases.  The first, *Lewis v. Colorado Rockies Baseball Club, Ltd.*, 941 P.2d 266 (Colo. 1997), explicitly limits its analysis to the federal constitution.  941 P.2d at 271–72.  The second, *Colorado Education Association v. Rutt*, 184 P.3d 65 (Colo. 2008), says nothing more about the Colorado Constitution than it being "bound to give at least equivalent protection to expressive freedoms as that which is mandated"

---

[4] This contradictory assertion—that the Secretary of State prefers "institutionalized and longstanding press entities" over all others—is also found earlier in the Reply brief.  [ECF No. 20 at 3].

by the United States Constitution.  184 P.3d at 76–77.  Neither citation provides independent support for the plaintiff's position, that disclosure requirements that differentiate based on the form of speech constitute an unconstitutional abridgement of speech.  In addition, if the plaintiff found this argument necessary to its case, it should not have entrusted it to one generic sentence in a footnote.  The Court cannot serve as plaintiff's advocate.  Counsel for Citizens United focuses its entire likelihood-of-success section on First Amendment jurisprudence.  As such, the Court will make no findings as to whether the plaintiff could make a showing that it is likely to succeed on any other legal basis, including the Colorado Constitution.

The Supreme Court has ruled time and again that there is a sufficiently important government interest supporting disclosure regimes.  The plaintiff does not argue otherwise.  The question comes down to whether Citizens United has met its burden of showing that there is no substantial relation between the disclosure regime as a whole and the government's interest in maintaining an informed electorate.  The Court finds that it has not.

*b. As-Applied Challenge*

Citizens United argues that, in the alternative, it should be entitled to the disclosure exemptions.  In particular, the plaintiff contends that it engages in media activities substantially similar to the activities of traditional press entities such that there is no constitutional basis for distinguishing between the two.  By making a distinction, it argues, the law disregards Citizens United's status as a press entity.

The "press entity" status that the plaintiff seeks does not exist in Colorado.  As the defendants and defendant-intervenors discuss, the disclosure exemptions are not premised on the type of entity but on the form of speech.  In fact, Citizens United admits that such is the case,

17

noting that "Colorado's media exemptions *turn primarily on the medium of transmission—i.e.*, whether speakers express their views via a print publication or speaker-owned broadcast facility." [ECF No. 20 at 8] (emphasis added). Because the exemptions are based on the form of speech, not on the speaker, it is possible for a press entity to create content not subject to an exemption. In those cases, the press entity must disclose its contributors just like anyone else. *See* [ECF No. 12 at 19 n.8] (citing *Reader's Digest Ass'n. v. Fed. Election Comm'n*, 509 F. Supp. 1210, 1214 (S.D.N.Y. 1981); *Fed. Election Comm'n v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238, 250–51 (1986) (*MCFL*)). For example, if Citizens United publishes an op-ed in a newspaper, it will not be required to disclose the funding behind the piece. Likewise, if the Denver Post produced a film expressly advocating for the reelection of Governor John Hickenlooper, it would be forced to comply with the disclosure requirements.

Citizens United looks to an advisory opinion issued by the Federal Election Commission in 2010 in support of its position. Advisory Opinion 2010-8 [ECF No. 1-1]. However, this advisory opinion only concerns whether Citizens United is eligible for exempt status under the Federal Election Campaign Act of 1971 ("FECA"), not whether it is exempt under the First Amendment. Moreover, while the FEC has construed the federal statute as creating a "press entity status"—which it admits is a term not used or defined in FECA, *id.* at 6—Deputy Secretary Staiert declined to create a similar status based on a plain-language reading of Colorado's disclosure regime, Declaratory Order [ECF No. 1-2] at 8–10.[5]

---

[5] While the plaintiff is free to argue that a proper analysis of the statute mandates the recognition of a "press entity" status, it has not done so in its motion. It is possible that such an argument would have had to have been made through appellate review of the Declaratory Order, though the Court has not researched this procedural question.

Refocusing the argument on the First Amendment, the plaintiff argues that if the disclosure exemptions are *compelled* by the First Amendment protections for freedom of the press, they must be construed to extend to Citizens United. *See* [ECF No. 4 at 21, 23]. Yet this case has nothing to do with whether the exemptions are in any way "compelled" by the First Amendment, and the Court has made no finding, or even a suggestion, that such is the case. It has only found that the plaintiff has not carried its burden in showing there exists no substantial relation between the disclosure regime (as a whole) and the sufficiently important government interest of informing the electorate.

Citizens United has not persuaded this Court to declare it a "press entity" exempt from Colorado's disclosure requirements, and it has not put forward any argument that there is a substantial likelihood that it would be able to convince the Colorado Supreme Court to read such a status into the law.

2. Irreparable Harm

There is a presumption of irreparable harm when First Amendment rights have been infringed. *See Oklahoma Corr. Prof'l Ass'n Inc. v. Doerflinger*, 521 Fed. App'x. 674, 677 (10th Cir. 2013) (citing *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005)). The plaintiff relies on this presumption to make a showing of irreparable harm. However, because the Court found that the plaintiff failed to demonstrate a likelihood of success on the merits, the presumption does not apply. Moreover, the plaintiff has put forth no evidence that it would suffer irreparable harm if it had to comply with the disclosure requirements. Of course, the plaintiff would be required to file reports disclosing its independent expenditures and electioneering communications along with the contributors (if any) who earmarked funds for

such speech in excess of the statutorily prescribed amount.  But, as discussed earlier, the *Citizens United* Court has already found that these types of reporting and disclosure requirements are not unduly burdensome under the First Amendment.  In putting forth no other evidence of irreparable harm, the plaintiff has not met its burden of proof.

    3. <u>Balance of Equities & Public Interest</u>

    The defendants suggest, and I agree, that in this case the balance of equities and public interest prongs should be considered together.  Citizens United contends that the balance of equities falls in its favor because "[i]t is axiomatic that a State does not 'have an interest in enforcing a law that is likely constitutionally infirm.'"  [ECF No. 4 at 25] (quoting *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 771 (10th Cir. 2010)).  However, as Citizens United points out, the balance only tips in its favor once it shows a substantial likelihood that the challenged law is unconstitutional, a showing which the plaintiff has not made.  It also argues that "a preliminary injunction vindicating constitutional rights is always in the public interest." *Id.* at 26.  Once again, such a contention is only true if the law actually infringes a constitutional right, a presumption which the plaintiff incorrectly relies upon.

    The defendants, on the other hand, focus on the purpose behind the disclosure scheme and the effect of enjoining its enforcement.  In particular, the defendants point out that the law was enacted to further a public interest—transparency in political speech—and that enjoining the enforcement of the scheme would harm the entire electorate of Colorado, who may not be able to make informed choices come election day.  The plaintiff would like the Court to ignore the public's motivations in passing the disclosure laws and the benefits they entail, but I cannot do that.  Amendment 27 was passed by a 2-1 margin in 2002.  Voters must have seen a significant

benefit, not only in having a disclosure regime, but also in memorializing it in the State constitution.  The Court likewise cannot ignore the potential for irreparable harm that will befall the voters of Colorado come election day should they be forced to vote without pertinent information on which to base their decisions.

Four prongs have to be met in order to win a motion for preliminary injunction.  Citizens United relies on winning its first prong in order to show that it would succeed on the other three prongs.  Thus, failing to persuade the Court of its likelihood of success makes denial of the motion all but inevitable.  In any event, the Court has considered the four requirements for the issuance of a preliminary injunction and concludes that they have not been established.  In short, the defendants have persuaded the Court that the plaintiff is unlikely to succeed on the merits, that the balance of harms falls in their favor, and that the issuance of an injunction would be adverse to the public interest.

## CONCLUSION

The marketplace of ideas does not function as well if listeners are unable to discern the private interests behind speech when determining how much weight to afford it.  Aware of this problem, in 1976 the Supreme Court declared that "disclosure requirements certainly in most applications appear to be the least restrictive means of curbing the evils of campaign ignorance and corruption that Congress found to exist."  *Buckley*, 424 U.S. at 68.  Thirty-four years later the *Citizens United* Court reaffirmed this sentiment by a vote of eight to one.  *See* 558 U.S. at 366–71.  Today, Citizens United comes before this Court hoping to unravel forty years of precedent by reframing the issue as one of content and viewpoint discrimination.  The Court is not persuaded.

**ORDER**

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction [ECF No. 4] is

DENIED.

DATED this 22nd day of September, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge